IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

VONCILLE M. HOLDEN,          *
                             *
        Plaintiff,           *
                             *
vs.                          *        CIVIL ACTION 08-00483-B
                             *
MICHAEL J. ASTRUE,           *
Commissioner of              *
Social Security,             *
                             *
        Defendant.           *

## ORDER

Plaintiff Vocille Holden ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits, disabled widow's benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 <u>et seq.</u>, and 1381 <u>et seq</u>. On December 22, 2008, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 14). Thus, this case was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636( c) and Fed.R.Civ.P. 73. (Doc. 16).   Oral argument was waived. (Docs. 15, 18).  Upon consideration of the administrative record and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.  **Procedural History**

Plaintiff protectively filed applications for disability insurance benefits, disabled widow's benefits, and supplemental security income on May 29, 2002. (Tr. 73, 74-76, 339, 340-341). Plaintiff alleges that she has been disabled since January 1, 1999 due to a disc on a nerve in her back and allergies. (Tr. 99). Plaintiff's applications were denied initially and on reconsideration. (Tr. 31-33, 342, 348-349). She timely filed a Request for Hearing before an Administrative Law Judge. (Tr. 42). On September 9, 2003, Administrative Law Judge James D. Smith ("ALJ Smith") held an administrative hearing which was attended by Plaintiff, her representative and a vocational expert. (Tr. 352-373). On January 16, 2004, ALJ Smith issued an unfavorable decision wherein he concluded that Plaintiff is not disabled. (Tr. 11-24). The Appeals Council ("AC") denied Plaintiff's request for review of this decision. (Tr. 6-8).

On May 11, 2006, this Court remanded the case to the Commissioner with instructions, and on August 10, 2006, ALJ Smith held a second administrative hearing which was attended by Plaintiff, her representative and a vocational expert. (Tr. 422-449, 491-503). On February 9, 2007, ALJ Smith issued a second unfavorable decision wherein he again concluded that Plaintiff is

not disabled.  (Tr. 388-404).  The AC denied Plaintiff's request
for review of this decision.  (Tr. 374-376).  Thus, the ALJ's
decision became the final decision of the Commissioner in
accordance with 20 C.F.R. § 404.981. (Tr. 6-8).  The parties agree
that this case is now ripe for judicial review and is properly
before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  __Issues on Appeal__

A.   Whether the ALJ erred by assigning controlling weight to
     the opinion of a non-examining, non-treating State Agency
     physician who indicated that he considered only the time
     period through December 2002.

## III. __Factual Background__

     Plaintiff was born on July 13, 1946, and was 57 years old at
the time of the September 2003 administrative hearing.  (Tr. 74, 94,
108, 494).  Plaintiff has a 9th grade education, and has past work
experience as a janitor in a factory and a school, and laborer in
a chicken house.  (Tr. 100, 105, 122, 356, 360-361, 362, 499).

     At the administrative hearing conducted on September 9, 2003,
Plaintiff testified that she worked at Marshall Durbin from 1994 to
1999, and that she injured her back while at work.  (362-363).  She
also testified that she could no longer perform her job at Marshall
Durbin because of her back and legs.  (Tr. 367).  Plaintiff further
testified that she has continued to have back pain since that time.
(Tr. 364).  According to Plaintiff, her back pain radiates down into

her legs, and she has legs cramp.  (Tr. 364).  She testified that
her pain is relieved by muscle relaxers; however, she has to lie
down after taking them because they make her sleepy.  (Tr. 365).
Plaintiff also testified that sometimes she has to lie on the floor
with pillows under her legs due to the pain, and she is unable to
leave her home because she cannot walk up the steps.  (Tr. 366-367).
She further testified that due to her pain, she is sometimes unable
to complete household chores and must rely upon neighborhood
children to assist her.  (Tr. 367).

At the hearing conducted in August 2006, Plaintiff testified
that she has continued to have pain in her back and legs, and that
she cannot sleep at night or during the day due to the pain.  (Tr.
496).  She further testified that her legs swell, and that she has
continued to have a rash.  (Tr. 496-497).  According to Plaintiff,
she washes dishes, but spends most of her day sitting.  Plaintiff
also testified that she can take care of her personal needs as long
as she is sitting down.  (Tr. 498).

## IV. <u>Analysis</u>

### A.   <u>Standard of Review</u>

In reviewing claims brought under the Act, this Court's role
is a limited one.  The Court's review is limited to determining 1)
whether the decision of the Secretary is supported by substantial
evidence and 2) whether the correct legal standards were applied.

<u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[1]   A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.   <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.   <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. DIST. LEXIS 10163 (S.D. Ala. 1999).

**B.   <u>Discussion</u>**

An individual who applies for Social Security disability benefits must prove his disability.   20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

---

[1]This Court's review of the Commissioner's application of legal principles is plenary.   <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[2]

In the case sub judice, the ALJ determined that while Plaintiff has the severe impairments of mild degenerative disc disease of the lumbar spine and obesity, they do not meet or medically equal the

---

[2]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 394, 399). The ALJ also determined that Plaintiff retains the residual functional capacity ("RFC") to perform a wide range of medium work, avoiding repetitive pushing and pulling with her lower extremities and only occasionally kneeling, crouching and crawling. (Tr. 400). The ALJ concluded that Plaintiff is capable of performing her past relevant work as an egg candler. (Tr. 403).

The relevant evidence of record[3] reflects that Plaintiff was treated by James A. Hassell, M.D., on January 13, 1997. Plaintiff reported back pain, which radiated down into both legs. On physical exam, Plaintiff had low back and sacral tenderness to palpation, low back pain with straight leg raising, and heel and toe walk with pain. A lumbar spine x-ray on this day showed no significant abnormality, and tiny anterior marginal osteophyte formation at L5. Her listed medications were Flextra[4] and Calcet[5]. Plaintiff was referred to Russell A. Hudgens, M.D. (Tr. 305-306).

---

[3]While the undersigned has examined all of the medical evidence contained in the record, including that which was generated before Plaintiff's alleged onset date, only that evidence which is relevant to the issues before the Court is included in the summary.

[4]Flextra contains a combination of acetaminophen, caffeine, and phenyltoloxamine, and is used to treat mild to moderate pain. See, www.drugs.com. Last visited July 28, 2009.

[5]Calcet is a mineral supplement used to treat leg cramps. See, www.drugs.com. Last visited July 28, 2009.

Plaintiff was treated by Dr. Hudgens at Old Shell Orthopaedic Associates for low back pain on January 24, 1997.  She reported that she injured her back while at work on January 3, 1997.  On physical exam, it was observed that Plaintiff had mild discomfort in the lumbosacral area with no spasm, and that straight leg raises caused discomfort in the hamstring, but no sciatica.  Her deep tendon and motor and sensory exams were normal bilaterally, and she had decreased flexion of the lumbar spine to approximately 70 degrees before pain.  She was prescribed Naprosyn[6], given exercises, and released to return to work.  (Tr. 338).

On January 4, 1999 Plaintiff returned to Dr. Hassell.  She reported low back pain, radiating down into her legs.  On physical exam, Plaintiff had a painful lumbosacral lower back, accentuated by straight leg raising and position changes.  Dr. Hassell observed that Plaintiff was obese, and was able to bear weight on her heels and toes with discomfort.  Plaintiff was diagnosed with low back pain.  (Tr. 262).

Washington County Hospital notes reflect that Plaintiff was treated on January 8, 1999 for back pain that radiates into her legs.  She described numbness over her left anterior thigh, radiating pain to post thigh bilaterally.  Plaintiff also reported

---

[6]Naprosyn is a nonsteroidal anti-inflammatory drug, used to treat inflammation, swelling, stiffness, and joint pain.  See, www.drugs.com.  Last visited July 28, 2009.

that she was not taking her medication as prescribed.  On physical exam, it was observed that she had a morbidly obese abdomen; positive leg raising to 50 degrees in the left leg and negative leg raising on the right; 2/4 deep tendon reflexes bilaterally; patella and ankle good pulses bilaterally; and full range of motion in the knee and ankle bilaterally.  Plaintiff was diagnosed with low back pain.  Her listed medications were Decadron[7], Vicoden[8], and Skelaxin[9].  (Tr. 159).

Plaintiff returned to Dr. Hassell for a follow-up visit on January 12, 1999.  Plaintiff reported back pain, as well as pain in both thighs and her calves.  On physical exam, Dr. Hassell observed that Plaintiff had pain in her lumbosacral back when she tried to change position from standing to sitting, or sitting to lying.  He further noted that Plaintiff had an obese abdomen, and diagnosed her with low back pain with radiation into both thighs.  (Tr. 261).

Dr. Hassell's notes reflect that Plaintiff returned for treatment on January 19, 1999.  Plaintiff reported upper lumbar pain

---

[7]Decadron is used to treat severe inflammation due to certain conditions.  See, www.drugs.com.  Last visited July 28, 2009.

[8]Vicodin is a combination of acetaminophen and hydrocodone, and is a narcotic pain reliever.  See, www.drugs.com.  Last visited July 28, 2009.

[9]Skelaxin is a muscle relaxer used to treat discomfort associated with acute painful muscle conditions.  See, www.drugs.com.  Last visited July 28, 2009.

radiating down her right leg and ankle, and that it hurt her to go from sit to stand, and sometimes lying supine.  Dr. Hassell referred Plaintiff to  Troy H. Middleton, M.D..  (Tr. 259).

In a letter dated January 20, 1999 from Dr. Middleton to Dr. Hassell, Dr. Middleton reported that his examination of Plaintiff revealed an obese patient with a protuberant abdomen and an antalgic gait.  Dr. Middleton noted that Plaintiff had no back spasm, and on physical exam, she had a tender low back to percussion, and negative straight leg raising in sitting position on percussion.  Her reflexes were 2+ in her knees and ankles, she could heel and toe walk, and her proximal legs were strong.  Rotation of her lumbar spine was restricted.  He diagnosed Plaintiff with unexplained low back pain.  Her listed medications were Hydrocodone[10] and Flexeril[11]. (Tr. 334).  In an undated letter from RN ("Debra" in Dr. Middleton's office), it was noted that Plaintiff's MRI films "look ok," and that Dr. Middleton was prescribing muscle relaxers and anti-inflammatories.  The letter also noted that Dr. Middleton opined that Plaintiff needed to lose weight in order to have a healthy back.  (Tr. 333).

Plaintiff was seen by Dr. Hassell on January 26, 1999.  She

---

[10]Hydrocodone is a narcotic pain reliever used for the short-term relief of moderate to severe pain. See, www.drugs.com. Last visited July 28, 2009.

[11]Flexeril is a muscle relaxer used to treat muscle spasms caused by painful muscle conditions. See, www.drugs.com. Last visited July 28, 2009.

reported low back pain, radiating into both legs.  Dr. Hassell added Lodine[12] to her medications.  (Tr. 257).  A February 9, 1999 MRI of Plaintiff's lumbar spine revealed mild compromise of the spinal canal in the transverse dimension of L4-5 and L5-S1, caused by hypertrophic changes of the ligamentum flavum and some hypertrophy of the fact joints; and mild narrowing of the spinal canal in the anterior-posterior dimension at L5-S1, which may be due more to congenital short pedicles.  The remainder of the MRI scan appeared normal.  (Tr. 256, 332).

Plaintiff saw Dr. Hassell on March 2, 1999, and reported pain in her calves and swollen legs for two days.   On physical exam, it was noted that Plaintiff had full range of motion in her knees, no edema, and negative Homan's[13] sign.  Her medications were listed as Skelaxin and Relafen[14].  (Tr. 255).

Plaintiff was seen by Dr. Hudgens on March 3, 1999.  She reported bilateral leg pain in her calf with cramping.  On physical exam, there was general tenderness in the calf of both legs.  She

_____

[12]Lodine is a nonsteroidal anti-inflammatory drugs used to relieve inflammation, swelling, stiffness, and joint pain.  See, www.drugs.com.  Last visited July 28, 2009.

[13]Homan's sign is present when passive dorsiflexion of the ankle elicits sharp pain in the calf, caused by thrombosis of the deep veins of the leg.  See, www.encyclopedia.thefreedictionary.com.  (Last visited July 27, 2009).

[14]Relafen is a nonsteroidal anti-inflammatory drug used to treat pain or inflammation.  See, www.drugs.com.  Last visited July 28, 2009.

was diagnosed with bilateral leg cramps, and prescribed Klonopin. (Tr. 337). She returned on March 17, 1999, and reported no improvement. No obvious abnormalities were seen on her neurological or vascular exam, and she was referred for EMG and nerve conduction studies. (Tr. 336).

Plaintiff saw Dr. Hassell on March 12, 1999, and reported bilateral leg cramps. Her listed medications were Skelaxin, Ultram[15], Relafen, Klonopin[16], and Klomyn. Dr. Hassell noted that Plaintiff may need an EMG and nerve conduction studies. (Tr. 254).

Plaintiff was seen by Dr. Hudgens on March 31, 1999, and reported pain, numbness and tingling in her legs, and some pain in her back. Dr. Hudgens observed that an MRI, and x-rays of her lumbar spine show no abnormalities. He also noted that Plaintiff had a normal neurovascular exam, and no pain on straight leg raising. Plaintiff was referred to a neurologist, and was instructed to continue activity as tolerated. Dr. Hudgens also observed that there is no objective evidence why she cannot work. Her listed medications were Skelaxin, Relafen and Klonopin. (Tr. 336).

---

[15]Ultram is a narcotic-like pain reliever, used to treat moderate to severe pain. See, www.drugs.com. Last visited July 28, 2009.

[16]Klonopin is in a group of drugs called benzodiazepines, used to treat seizure disorders or panic disorder. See, www.drugs.com. Last visited July 28, 2009.

Plaintiff was treated in Dr. Hassell's office on April 13, 1999.  She reported back pain.  (Tr. 253).  Nurse Practitioner Melissa Williams noted that Plaintiff was no better, and was now reporting cramps.  Plaintiff was diagnosed with back strain, and prescribed Decadron and Naprosyn.  (Tr. 252).

Plaintiff was seen at the Washington County Hospital on August 27, 1999.  She reported right knee pain, and was prescribed Vicodin and Oradis.  (Tr. 158).  Plaintiff was seen by J. Steve Donald, M.D., on August 30, 1999.  She reported right knee pain.  (Tr. 251). Dr. Donald noted that Plaintiff had infrapatellar tenderness such that she had trouble ambulating, and that her knee cap was non-tender except at its inferior pole.  Plaintiff was injected with Aristocort[17] and Lidocaine[18], and prescribed Lodine and Darvocet. (Tr. 250).

Plaintiff was treated by the Mobile County Health Department, on January 14, 2002.  Plaintiff reported back and leg pain, and cough, and that she was not taking any medication.  On physical exam, it was observed that Plaintiff had an obese abdomen, tenderness in her back below the lumbosacral area, and enlarged red

---

[17]Aristocort is a corticosteroids, used to provide relief for inflamed areas of the body.  See, www.drugs.com.  Last visited July 28, 2009.

[18]. Lidocaine is used to decrease pain and discomfort resulting from urinary tract procedures or the placement of endotracheal tubes.  See, www.drugs.com.  Last visited July 28, 2009.

tonsils.  She was diagnosed with pharyngitis and low back pain, and She was prescribed Anaprox, Flexeril, Robitussin and Zyrtec.  (Tr. 195-197).  Plaintiff returned on January 29, 2002, and reported continued low back pain.  Plaintiff was diagnosed with low back pain.  (Tr. 194). During a  March 7, 2002 visit, Plaintiff reported pain in her legs and of headaches.  On physical exam, it was observed that she had no tenderness in her back, and vague tenderness in her left paralumbar legs.  Her listed medications were Elavil[19] and Anaprox.   (Tr. 192-193).

Treatment notes from Stanton Road Clinic dated March 21, 2002 reflect that Plaintiff reported low back pain, radiating into her legs.  She also reported arm pain that interfered with her sleep. On physical exam, morbidly obese abdomen was noted.  Plaintiff was diagnosed with chronic L4-5 paraspinal back pain and bilateral intermittent arm pain. (Tr. 199).   Plaintiff underwent nerve conduction studies and an electromyogram of her lower extremities at Springhill Memorial Hospital on March 22, 1999.  Both studies were normal.  (Tr. 173-178).

Plaintiff returned to Mobile County Health Department on April 19, 2002, and reported  rash on her stomach, legs and breasts.  She was diagnosed with dermal crural.  (Tr. 190-191).   Treatment notes

---

[19]Elavil is a tricyclic antidepressant, used to treat symptoms of depression.  See, www.drugs.com.  Last visited July 28, 2009.

from Springhill Memorial Hospital dated April 20, 2002 reflect that Plaintiff complained of rash on her back and legs for a week, with no relief from her primary care physician.  She left before being seen by a doctor.  (Tr. 200-206).  Plaintiff was seen at the Mobile County Health Department on April 23, 2002, and reported that her medication was not helping.  She was diagnosed with urinary tract infection, dermatitis and vaginitis.  (Tr. 189).  Plaintiff presented to Washington County Hospital on April 29, 2000, and reported right sided chest pain.  She was diagnosed with musculoskeletal chest pain.  Her listed medication was Naproxen. (Tr. 157).

Plaintiff was treated at Atlanta Medical Center on May 15, 2002, for chest pain. A chest x-ray on this day was normal, and she was diagnosed with chest wall pain.  She reported a history of herniated disc in her lower back, and chronic low back pain.  (Tr. 207-217).  Plaintiff presented to Fulton County Health Department on May 17, 2002, and was diagnosed with vulvovaginitis.  (Tr. 222-229).  She returned for follow-up treatment on June 3, 2002, and was referred to dermatologist.  (Tr. 218-221).

On November 4, 2002, Diana Whiteman, M.D., performed a consultative evaluation of Plaintiff.  On physical exam, Plaintiff had full range of motion in upper and lower extremities, and was guarded in the hips secondary to low back pain.  In her thoracolumbar spine, she was able to forward flex to 50 degrees,

extension 0 to 15 degrees with pain, right and left lateral flexion 0 to 15 degrees, and right and left rotation 0 to 10 degrees.  She complained of pain with most end ranges of motion.  Neurologically, her deep tendon reflexes were intact, and sensation was completely intact to light touch.  She ambulated without assistive devices, and her strength testing was considered to be functional in both upper and lower extremities with some guarding secondary to pain in the lower back.  Dr. Whiteman observed that Plaintiff appeared able to manage her activities of daily living despite the pain in her lower back.  She diagnosed Plaintiff with low back pain, probably osteoarthritis. (Tr. 231).  A lumbar spine x-ray on this day showed slight scoliosis and was otherwise unremarkable.  (Tr. 232).

A Physical Residual Functional Capacity Assessment was completed by a State Agency physician, Dr. Hoffman, on December 3, 2002.  Following a review of Plaintiff's medical records, he opined that Plaintiff is limited to lifting/carrying up to 50 pounds occasionally and 25 pounds frequently, and sitting/standing/walking about six hours in an eight-hour workday.  He further opined that Plaintiff should avoid repetitive pushing/pulling, and is limited to occasional kneeling, crouching, and crawling.  (Tr. 233-241).

Plaintiff presented to Mobile County Health Department on January 27, 2003, and reported a headache.  Her physical exam was normal except for congested nose with bilateral polyps.  An x-ray of her L-S spine was ordered.  Plaintiff reported that she was not

taking any medications.  (Tr. 187-188).  Plaintiff was seen at the
Mobile County Health Department on February 11, 2003.  She reported
continued low back pain, and numbness and tingling down her hips and
thigh.  Her L-S spine x-ray was within normal limits.  On physical
exam, it was noted that Plaintiff had negative straight leg raises,
and painful palpation throughout her lower back.  She was diagnosed
with L-S pain and resolving sinusitis.  She declined an orthopedic
consultation, and her medications were listed as Flexeril, Anaprox,
Toradol[20], and Zyrtec  (Tr. 184-186).  During a March 6, 2003 visit
to the Mobile County Health Department, Plaintiff reported continued
leg and back pain, and was diagnosed with radiculopathy.   Her
medication  list  included  Flexeril,  Anaprox,  Darvocet[21]  and
Neurontin[22].  (Tr. 181-183).  She returned for a follow-up visit on
March 20, 2003, and reported pain in her lower left quadrant for two
or three days.  On physical exam, it was observed that she had a
cough and enlarged tonsils, and was tender in the lower lumbar area.
She was diagnosed with pharyngitis, sinus headache, and urinary
tract infection.  (Tr. 179-180).

---

[20]Toradol is in a nonsteroidal anti-inflammatory drug used
short-term to treat moderate to severe pain.  See, www.drugs.com.
Last visited July 28, 2009.

[21]Darvocet is a narcotic pain reliever used to relieve mild
to moderate pain.  See, www.drugs.com.  Last visited July 28,
2009.

[22]Neurontin is used to treat seizures, and also for treating
nerve pain associated shingles or infection.  See, www.drugs.com.
Last visited July 28, 2009.

Plaintiff was treated at Washington County Hospital on May 22, 2003, for a rash and itching all over.  She reported a history of back pain.  Plaintiff was diagnosed with allergic dermatitis.  (Tr. 474).  Plaintiff returned to Washington County Hospital on May 28, 2003, and reported a history of low back pain and a rash all over her body. She was diagnosed with rash. (Tr. 471).  Plaintiff was seen at the Washington County Hospital on July 1, 2003.  She reported a rash, and was diagnosed with severe eczematous dermatitis and crural dermatitis.  (Tr. 468).  She returned on July 9 and 16, 2003.  She reported itching on her legs and hands, and was diagnosed with mixed moderate severe dermatitis.  (Tr. 243, 245).

Plaintiff returned for a follow-up visit with Dr. Hassell on August 13, 2003.  She reported itching skin.  Dr. Hassell noted that Plaintiff's dermatitis was improving, but that she tended to scratch it too much.  (Tr. 331).  Treatment notes from Washington County Hospital dated May 2, 2004 reflect  that Plaintiff reported a headache, was diagnosed with migraine headache and was prescribed Demerol[23] and Phenergan[24].  (Tr. 476).  Plaintiff was treated at Washington County Hospital on December 31, 2004 for cough and

---

[23]Demerol is a narcotic pain reliever used to treat moderate-to-severe pain.  See, www.drugs.com.  Last visited July 28, 2009.

[24]Phenergan is an antihistamine, used to treat allergy symptoms such as itching, runny nose, sneezing, itchy or watery eyes, hives, and itchy skin rashes.  See, www.drugs.com.  Last visited July 28, 2009.

congestion, and was diagnosed with acute asthmatic bronchitis. (Tr.
479, 481). A chest x-ray on this day showed no acute process. (Tr.
482). Plaintiff was treated at Washington County Hospital on
September 1, 2005. She reported a sore throat, cough and trouble
swallowing, and was diagnosed with bronchitis. (Tr. 478, 484).

Plaintiff was seen by Nino Kurtsikidze, M.D., on January 19,
2006. She reported a recurrent rash. On physical examination,
Plaintiff was described as morbidly obese. She was diagnosed with
allergic dermatitis. (Tr. 490). She returned on February 7, 2006,
complaining of leg and back pain. On physical exam, it was observed
that she had paraspinal tenderness in the lumbar area, "somewhat
questionable" positive straight leg raising on the right, positive
peripheral pulses, negative Homan's sign, and severe morbid
abdominal obesity. She was diagnosed with abdominal obesity, back
pain leg cramps, and elements of sciatica with possible restless leg
syndrome. (Tr. 489).

An x-ray of Plaintiff's right hand on May 4, 2006 resulted in
no acute findings. (Tr. 483).

Plaintiff returned to Dr. Kurtsikidze on May 23, 2006, and
reported headaches, stress, and pain in her left and right hands.
Dr. Kurtsikidze noted that Plaintiff reported that she was cleaning
houses. On physical exam, Dr. Kurtsikidze observed no temporal
tenderness, unremarkable joints, no swelling or abnormalities in her
hands, and obese abdomen. He diagnosed her with arthritis, mostly

in the hands, and likely migraine headaches.  (Tr. 488).  Plaintiff
was seen by Dr. Kurtsikidze on June 28, 2006, and reported cough,
runny nose and nasal congestion.  She was diagnosed with cough with
questionable sinusitis bronchitis, morbid obesity, and dyslipidemia.
(Tr. 487).

Plaintiff presented to Dr. Kurtsikidze on July 20, 2006, and
reported pain in her legs.  Dr. Kurtsikidze noted that her reflexes
were present, and Homan's sign was negative.  She was diagnosed with
bilateral leg pain, possibly as a side effect of Lipitor. Her
medication was changed to Crestor.  (Tr. 486).

**1.   Whether the ALJ erred by assigning controlling
       weight to the opinion of a non-examining, non-
       treating State Agency physician who indicated
       that he considered only the time period through
       December 2002.**

Plaintiff argues that the ALJ erred in assigning controlling
weight to the opinion of a non-examining, non-treating State Agency
physician, who considered only the medical evidence through December
2002.  According to Plaintiff, the ALJ erred in not assigning any
weight to any medical opinion from January 1, 2003 through February
9, 2007 time period.  Plaintiff also argues that the State Agency
physician failed to consider Plaintiff's 1999 MRI or her severe
impairment of morbid obesity.  The Commissioner argues that the ALJ
gave substantial evidentiary weight to both the findings and
conclusions of Plaintiff's treating physician, Dr. Hudgens, and to

the opinions expressed by Dr. Hoffman, the State Agency physician. The Commissioner also argues that the 1999 MRI referenced by Plaintiff was reviewed by Plaintiff's treating physician, who opined that there were no abnormal findings warranting additional treatment, and prescribed muscle relaxers and anti-inflammatory medication.

The Commissioner also argues that the relevant period of consideration for Plaintiff's disability insurance benefits and disabled widow's benefits is on or before September 30, 2001. According to the Commissioner, for purposes of Plaintiff's claim for disability insurance benefits, she was required to show that she was disabled on or before September 30, 2001.  The Commissioner also asserts that for purposes of widow's benefits, Plaintiff was required to establish that her disability began on or before March 31, 2001, or either within seven years of her husband's death or seven years after she was last eligible for survivor's benefits. (20 C.F.R. 404.335( c)).  As for Plaintiff's claim for supplemental security income, the Commissioner further argues that Plaintiff must establish disability between the date she filed her application, May 29, 2002, and the date of the ALJ opinion, February 9, 2007.

In determining what weight to assign the opinion of Plaintiff's treating physician, Dr. Hudgens, the ALJ stated as follows:

> [T]he claimant's treating orthopedic surgeon, Dr. Russell Hudgens, stated in March, 1999 that the claimant could continue her work activity as tolerated and that he

had no objective evidence as to why she could not work
.....................................................

     According to Dr. Hudgens' treatment records, he had treated the claimant at the time of her back injury in 1997 and at no time thereafter did he indicate that the claimant was unable to perform her job at Marshall Durbin. Consequently, the Administrative Law Judge has assigned substantial evidentiary weight to the findings and conclusions of Dr. Hudgens, as set out in his treatment records, as well as to those expressed by the non-examining State Agency medical consultant regrading the claimant's physical capacities and limitations.
.....................................................

     Based on his review of the evidentiary record as it existed in December, 2002, which included Dr. Hudgens' assessment of the claimant's back impairment, the State Agency medical consultant concluded that the claimant possessed the residual functional capacity to perform medium work activity with no significant postural, manipulative, visual, communicative, or environmental limitations. The medical consultant's opinions are consistent with and supported by the objective medical evidence contained in the record. The Administrative Law Judge acknowledges that, as a non-examining physician, the medical consultant's opinions are not entitled to controlling weight, but must be considered and weighed as those of a highly qualified physician who is an expert in the evaluation of the medical issues in disability claims under the Social Security Act. The opinions of a non-examining, reviewing physician are entitled to be accorded weight when they are consistent with the medical evidence of record, as they are in the present case. Because there is nothing inconsistent in the medical records listed by the non-examining, reviewing physician in this case and his conclusions as to the claimant's severe musculoskeletal impairment and corresponding physical functional limitation, the Administrative Law Judge finds that his opinion is entitled to be accorded significant evidentiary weight.

(Tr. 400-401).

     While Plaintiff is correct that the opinion of a non-examining

reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision, such opinions are nevertheless to be considered, and where such opinions are consistent with those of treating physicians, the ALJ is entitled to rely upon them. Milner v. Barnhart, 275 Fed. Appx. 947 (11th Cir. 2008)(unpublished opinion)((holding that an ALJ is required to consider the opinions of non-examining state agency medical and psychological consultants, and may rely on their opinions when they do not conflict with those of examining sources). See also, Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991) (finding that the ALJ did not err in relying on the opinion of the non-examining physician since this opinion was consistent with the opinions of the examining physicians); Osborn v. Barnhart, 194 Fed. Appx. 654, 667 (11th Cir. 2006) (holding that substantial evidence supported the ALJ's decision to give more weight to the state agency's evaluation and give only minimal weight to the opinion of the claimant's treating physician because it was "nothing more than a conclusory statement unaccompanied by objective medical evidence" and did not indicate the limitations that the diagnoses placed on the claimant's ability to work).

In this case, the ALJ expressly assigned "substantial weight" to the opinion of Dr. Hudgens, Plaintiff's treating orthopedic doctor, and "significant" weight to the opinion of Dr. Hoffman, the non-examining State Agency medical consultant whose opinions the ALJ

found to be consistent with those of Dr. Hudgens.  A review of the medical record reflects that Dr. Hoffman's opinion is well supported by that of Plaintiff's treating orthopedic physician and by the record as a whole; thus, the ALJ did not err in assigning significant weight to the opinion of Dr. Hoffman.

As noted supra, Plaintiff's treating orthopedic doctor, Dr. Hudgens observed on March 3, 1999 that Plaintiff had no obvious abnormalities on her neurological or vascular exams.  (Tr. 337). On March 31, 1999, Dr. Hudgens noted that Plaintiff's MRI and x-rays of her lumbar spine showed no abnormalities, that she had a normal neurovascular exam, that she had no pain on straight leg raising, and that he saw no objective evidence why she could not work.  (Tr. 336).

The medical record as a whole further supports the opinions of Dr. Hudgens and Dr. Hoffman.  For example, a lumbar spine x-ray on January 13, 1997, showed no significant abnormality.  (Tr. 305-306). In a January 20, 1999 letter, Dr. Middleton reported that on physical examination of Plaintiff, she had a tender low back to percussion, but negative straight leg raising in sitting position on percussion, 2+ reflexes in her knees and ankles, and strong proximal legs, and that she could heel and toe walk.  He described her back pain as "unexplained."  (Tr. 334).

In addition, the report of Plaintiff's February 1999 MRI showed only mild compromise and mild narrowing of the spinal canal, and

that the MRI was otherwise normal.  (Tr. 332).  Nerve conduction studies and an electromyogram of Plaintiff's lower extremities on March 22, 1999 were normal.  (Tr. 173-178).  In a physical exam of Plaintiff by Dr. Hassell on March 2, 1999, he observed that Plaintiff had a full range of motion in her knees, no edema, and negative Homan's sign.  (Tr. 255).  Finally, in a physical exam at the Mobile County Health Department on March 7, 2002, it was noted that Plaintiff had no tenderness in her back, and vague tenderness in her legs.  (Tr. 192-193).  Based on this record evidence, it is clear that the opinion of the State Agency non-examining physician does not stand alone, and in fact is consistent with the opinions of Plaintiff's treating physician, and with the record as a whole. Thus, the ALJ did not err in assigning significant weight to the opinions expressed by the State Agency non-examining physician[25].

---

[25]Additionally, Plaintiff's argument that the ALJ erred in assigning substantial weight to Dr. Hoffman's opinion because he failed to consider the results of Plaintiff's 1999 MRI, or the limitations resulting from Plaintiff's obesity must likewise fail.  As noted supra, the 1999 MRI revealed only mild impairments, and was otherwise normal.  Thus, there is nothing about the results of the 1999 MRI that is inconsistent with the opinions of either Plaintiff's treating orthopedic physician, Dr. Hudgens, or the State Agency non-examining physician.

In addition, while the State Agency non-examining physician did not reference Plaintiff's obesity, he noted that he had undertaken a complete review of Plaintiff's medical records. These records include repeated references to Plaintiff's obesity, but are devoid of any evidence which suggests that Plaintiff experiences any functional limitations as a result of her obesity.  Accordingly, Plaintiff's assertions that the State Agency non-examining physician failed to consider her obesity is without merit.

Plaintiff's argument that the ALJ erred in failing to assign any weight to any medical opinion from the January 1, 2003 through February 9, 2007 time frame is without merit.  The record contains very few treatment notes for the time period in question, and a review of those treatment records for that period which are before the court are totally devoid of any evidence that reflects that Plaintiff has any functional limitations resulting from her back pain or her obesity.  For instance, the record includes treatment notes dated July and September of 2003 from Dr. Hassell, who treated Plaintiff during this period for a rash on her skin.  (Tr. 243-247). Plaintiff was also treated at the Mobile County Health Department in 2003.  In the January 2003 treatment note, it is observed that on physical exam, Plaintiff's musculoskeletal and extremities exam was normal.  (Tr. 187-188).   In the February 2003 treatment note, it was observed that Plaintiff complained of low back pain, but on physical exam, she had negative straight leg raising.  (Tr. 184-185).

The record also includes five treatment notes from Dr. Kurtsikidze, dating from January 2003 to July 2006.  During Plaintiff's sporadic visits to Dr. Kurtsikidze, she only reported back and leg pains during two of the visits.  The treatment records reflect that on examination, Plaintiff had positive peripheral pulses and negative Homan's sign, and that the one instance in which she had positive straight leg raising on the right, Dr. Kurtsikidze

indicated it was "somewhat questionable." Additionally, while Dr. Kurtsikidze diagnosed Plaintiff with morbid obesity, there is nothing in his treatment notes which reflect that Plaintiff had any limitations resulting from her back pain, leg pain, or morbid obesity. In fact, the record is totally devoid of any opinion from any source that Plaintiff experienced any limitations resulting from her back pain, leg pain or obesity during the time periods in question. Accordingly, Plaintiff's assertion that the ALJ erred in failing to assign any weight to any medical opinion from the January 1, 2003 through February 9, 2007 time frame is without merit.

**V.**    **Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits, disabled widow's benefits and supplemental security income, is due to be **AFFIRMED.**

DONE this **3rd** day of **September 2009.**

                    /s/ SONJA F. BIVINS
                UNITED STATES MAGISTRATE JUDGE

27